J-S52041-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| OBATAIYE KAREE SCOTT, JR. | |
| Appellant | No. 372 WDA 2015 |

Appeal from the PCRA Order of February 13, 2015
In the Court of Common Pleas of Fayette County
Criminal Division at No.: CP-26-CR-0000454-2013

BEFORE: SHOGAN, J., OLSON, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                    **FILED OCTOBER 23, 2015**

Obataiye Scott appeals, *pro se*, the February 13, 2015 order dismissing his petition for relief pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46, without an evidentiary hearing. We affirm.

In 2013, Scott was convicted by a jury of burglary, theft by unlawful taking, and criminal mischief. On September 27, 2013, the trial court sentenced Scott to three to six years' incarceration. On direct appeal, we adopted the trial court's summary of the facts underlying Scott's convictions and sentence. Once more, we adopt those facts for the purpose of this collateral appeal:

> On October 16, 2012, the victim, Tiffany Woods, was residing with her [seven]-year-old daughter in a two story home at 63 Steel Street, Republic, Fayette County, Pennsylvania. On October 16, 2012, after completing her shift at Teletech, her

place of employment in Uniontown, Pa., Tiffany picked up her daughter at her sister's residence and returned to the home at 63 Steel Street, Republic. Following the evening meal[,] she watched TV, got her daughter ready for bed and retired for the night to her second floor bedroom at approximately 11:15 p.m.

The following morning, October 17, 2012, Tiffany awoke before 6:30 a.m. to get ready for work. When she descended the stairs from the second floor, she saw that her dining room, living room and kitchen lights were turned on when she had turned them off the night before. She also observed that drawers were open and that papers were strewn across the floor. She entered the kitchen and observed that two sets of car keys and house keys[,] which she kept on a table[,] were missing. Tiffany Woods then ran outside to see if her car had been stolen. Before reentering her home[,] she noticed that her garbage can was propped against the dining room window and the screen on the window had been cut. One set of keys to her house and car were on a smiley face keychain, and the other set were on a yellow Polo keychain[,] which also contained her daughter's picture.

On October 17, 2012, around 3:00 a.m., Sergeant Norman Howard of the Redstone Township Police Department had occasion to enter a residence at 7 Johnson Street, Republic, Pa. The residence at 7 Johnson Street is located one street down from Steel Street and a distance of approximately 200 yards from Tiffany Woods' residence at 62 Steel Street, Republic. Upon entering the residence at 7 Johnson Street, Republic, Officer Howard observed [Scott] and noticed that [Scott] had two sets of keys in his hand. Officer Howard observed [Scott] throw the keys onto the floor in front of him. Howard retrieved the two sets of keys and entered them into evidence at the Redstone Township Police Station.

Following consultation with the Pennsylvania State Police [trooper] who had investigated the burglary at 63 Steel Street, Officer Troy Rice of the Redstone Township Police Department met with Tiffany Woods at the Redstone Township Police Station. Woods identified the two sets of keys as being the keys stolen from her house during the night of October 16-17, 2012. Officer Rice then observed as Tiffany Woods utilized the keys to start her white Sunfire vehicle.

- 2 -

On October 30, 2012, [Scott] met with Trooper Matthew Gavrish, a criminal investigator with the Belle Vernon Barracks of the Pennsylvania State Police. Gavrish informed [Scott] of his **Miranda**[1] rights following which [Scott] waived his right to remain silent and provided Trooper Gavrish with a statement. [Scott] admitted to his involvement in the burglary of Tiffany Woods' residence at 63 Steel Street, Republic. [Scott] indicated that he stood on the road as a lookout while [his co-defendant] stood on a trash can. He heard him cutting something and then [the co-defendant] went through the window. According to [Scott,] "all we got was two sets of car keys." [Scott] stated that the police came to Robert Savage's house [on Johnson Street] and took possession of the sets of keys.

Trial Court Opinion, 1/8/2014, at 2-4.

On October 14, 2014, a panel of this Court affirmed Scott's judgment of sentence in an unpublished memorandum. *See Commonwealth v. Scott*, No. 1595 WDA 2013, slip op. at 1, 10 (Pa. Super. Oct. 14, 2014). Scott did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.

On October 6, 2014, before this Court affirmed his judgment of sentence, Scott filed a PCRA petition. The PCRA court took no action on the petition until after our affirmance. Thus, on October 15, 2014, the PCRA court considered the petition filed on that date and appointed counsel to represent Scott. Scott submitted multiple letters thereafter identifying other PCRA claims for the court's consideration. On January 15, 2015, counsel filed a no-merit letter and motion to withdraw as counsel pursuant to the

_____

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

well-established criteria set forth in *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).  Scott responded to the motion, and indicated to the PCRA court that he wanted to proceed *pro se*.  On February 13, 2015, the PCRA court concluded that counsel had satisfied the requirements of *Turner* and *Finley*, and granted counsel's motion to withdraw as counsel.  Additionally, the court dismissed Scott's PCRA petition without an evidentiary hearing, and without having issued notice of the court's intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907.

On March 4, 2015, Scott filed a notice of appeal.  On March 9, 2015, the PCRA court directed Scott to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  On March 12, 2015, Scott filed a concise statement, wherein he identified the following four issues as those he intended to raise in this appeal:

1. The court erred by denying [Scott's] PCRA petition without sending an intent to dismiss notice required by Rule 907.

2. Violation of 4th Amendment Right [to] the United States Cons[titution].

3. Violation of the knock and announce procedure.

4. Violation of the [*sic*] Pa. Article I, Section 8.

Concise Statement, 3/12/2015.  On March 26, 2015, the PCRA court issued an opinion pursuant to Pa.R.A.P. 1925(a).

Presently, Scott raises twelve issues in his *pro se* brief. Those issues are as follows:[2]

1. Whether the court erred by denying [Scott's] PCRA petition concerning [Scott's] assertion of the arrest being unconstitutional?

2. Whether [Scott's] 4th Amend. Rights were violated due to the illegal search and seizure?

3. Whether the "NO MERIT" **Turner/Finley** letter submitted by Attorney Zerega made it proviso requiring [Scott] to file an amended petition?

4. Did the Redstone Police Dept. Officers herein; Officers Norman Howard, Troy Rice, and Jonathan Brant act in bad faith as a result of their lack of probable cause to enter the proprietors home herein; Mr. Robert Savage III, without a search warrant nor the proprietors permission in violation of the pa const. Article I, section 8?

5. Whether the Redstone Police Dept. Officers herein; Officers Norman Howard, Troy Rice, and Jonathan Brant violated the knock and announce rule due to the fact of their entering Mr. Robert Savage's home without knocking and/or announcing who they were nor the reason or their entering the premises without permission to arrest [Scott] without a warrant.

6. Should this Honorable Court overturn [Scott's] conviction and vacate the sentence?

7. Whether this Honorable Court should issue a new trial and a suppression hearing due to evidence from statement including but not limited to car keys being a product of an illegal arrest?

8. Whether the Honorable Ralph C. Warmen [*sic*] erred when he failed to properly take action when [Scott] took the stand to offer testimony regarding what happened the morning of October 17, 2012? [Scott] raised an issue at trial concerning

_____

[2] As much as possible, we reproduce Scott's issues *verbatim*.

the Redstone Officers herein officers: Norman Howard, Troy Rice, and Jonathan Brant, not having a search warrant and/or affidavit of probable cause. Did the trial court err in waiving this issue raised by [Scott]?

9. Whether the Redstone Police Dept. erred in arresting [Scott] without a search warrant and arrest warrant, and ignoring [Scott] when he requested the aforementioned documents – (search warrant and arrest warrant)?

10. Whether the illegal search and seizure conducted by the Redstone Police Dept. on October 17, 2012 result in the false conviction and sentence of [Scott] when the search warrant and arrest warrant were never obtained although they were prerequisitely required by law in violation of [Scott's] 4th amendment and 14th amendment's due process clause.

11. Whether the fact that [Scott] had two warrants for his arrest should the arrest and search warrant of [Scott] been present and presented to the preprieter of the home and [Scott]? Whether the warrants should have been presented before or after [Scott] had been detained? before or after entry? Because [Scott] was not fleeing from the police in hot pursuit moreover, the police did not see [Scott] enter the residence, nor did [Scott] pose an immediate threat to anyone in the residence additionally, [Scott] was not considered armed and dangerous.

12. Is the District Attorney's Office of Fayette County Pennsylvania or Redstone Police Department holding evidence from [Scott], because [Scott] was never entitled to such evidence explaining how they received the information about where [Scott] was located, and who gave the whereabouts of [Scott]? [Scott] is entitled to such evidence.

Brief for Scott at 4-6.

We may dispose of all but one of Scott's claims quickly. Issues 3 and 12 do not appear in the issues that Scott identified in his Rule 1925(b), nor are they fairly encompassed within those issues as framed by Scott. Thus, these two claims are waived. *See* Pa.R.A.P.(b)(4)(vii); ***Commonwealth v.***

- 6 -

*Hill*, 16 A.3d 484, 488 (Pa. 2011) (stating "that any appellate issues not raised in a compliant Rule 1925(b) statement will be deemed waived.").

Issues 2 and 4 through 11 are all claims in which Scott alleges violation of his rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. Although claims implicating violations of constitutional rights are cognizable under the PCRA, *see* 42 Pa.C.S. § 9543(a)(2)(i), such claims nonetheless are subject to the waiver provision of the PCRA. Pursuant to subsection 9544(b) of the PCRA, an "issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544(b). Each of Scott's constitutional claims could have, and should have, been raised in the first instance on direct appeal. Because they were not, under the clear terms of the PCRA, they are waived.

We turn to the lone remaining claim raised by Scott in his brief: whether the PCRA court erred by dismissing his PCRA petition without first issuing a Rule 907 notice of the court's intent to dismiss the petition without a hearing. Pennsylvania Rule of Criminal Procedure 907 provides, in pertinent part, as follows:

> the judge shall promptly review the petition, any answer by the attorney for the Commonwealth, and other matters of record relating to the defendant's claim(s). If the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the

- 7 -

parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal. The defendant may respond to the proposed dismissal within 20 days of the date of the notice. The judge thereafter shall order the petition dismissed, grant leave to file an amended petition, or direct that the proceedings continue.

Pa.R.Crim.P. 907(1). It is now well-settled that a PCRA court's compliance with this rule is mandatory. *See Commonwealth v. Feighery*, 661 A.2d 437, 439 (Pa. 1995) ("It is, of course, clear that the notice requirement of the intention to dismiss, is mandatory ('the judge shall (give notice and) shall state (the reasons)).'" However, that compliance with the rule is mandatory does not mean, *ipso facto*, that each violation of the rule warrants reversal. Indeed, in the case *sub judice*, even though the PCRA court dismissed Scott's petition without first issuing a Rule 907 notice to Scott, he is not entitled to a reversal.

Our discussion begins with *Commonwealth v. Bond*, 630 A.2d 1281 (Pa. Super. 1993), which the PCRA court relied upon in concluding that Scott was not entitled to relief due to the court's failure to issue notice. In *Bond*, after PCRA counsel filed a "no-merit" letter, the PCRA court dismissed Bond's PCRA petition without a hearing, and without issuing notice of its intent to dismiss as was required under former Rule 1507.[3] On appeal, Bond sought a remand to be given an opportunity to respond to the trial court's belief

_____

[3] Pa.R.Crim.P. 1507 is now Rule 907. The content of these two rules do not differ in any material way. For consistency, we will refer to the rule as Rule 907, save for the first instance above.

that his petition lacked merit, an opportunity that he would have been afforded had the court complied with Rule 907. We held that Bond was not entitled to the relief that he sought.

We held that, because of the extensive and "elaborate set of requirements" with which counsel must comply when seeking to withdraw as counsel pursuant to **Turner** and **Finley**, Bond was "well aware of the deficiencies of his claims" and suffered no prejudice by the court's failure to comply strictly with Rule 907. **Bond**, 965 A.2d at 1283. Furthermore, we noted that, because Bond received the "no-merit" letter as well as numerous other pieces of correspondence from counsel, Bond received the full entitlement of judicial review. We iterated that Bond was aware of the problems with his claims and that he could have responded to the "no-merit" letter, but opted not to. Finally, as noted, we conducted an analysis of whether Bond could show prejudice by the court's failure, and determined that he could not because counsel advised him of his appellate rights and that he could proceed *pro se*. We ultimately held that "Bond received every bit of judicial review to which he is entitled. We will not prolong this litigation." **Id.**

We distinguished **Bond**, and declined to apply it, in two subsequent cases. In **Feighery**, we again were faced with a situation in which a PCRA court dismissed a PCRA petition without a hearing and without Rule 907 notice after counsel sought to withdraw via the **Turner/Finley** rubric. **Feighery**, 661 A.2d at 438-39. We held that **Bond** was inapposite because,

in **Feighery**, there was "no evidence of correspondence with counsel and only a statement of counsel's intention to forward a copy of the 'amended **Finley**' letter." **Id.** at 439. Feighery insisted that counsel never consulted with him. **Id.** Finding these circumstances substantially different from those in **Bond**, and insufficient to warrant overlooking the mandatory nature of Rule 907, we remanded the case to the PCRA court.

Similarly, in **Commonwealth v. Hopfer**, 965 A.2d 270 (Pa. Super. 2009), once more the PCRA court dismissed a PCRA petition without a hearing and without Rule 907 notice after counsel was permitted to withdraw pursuant to **Turner** and **Finley**. Like in **Feighery**, we found the circumstances in **Hopfer** markedly different from those in **Bond**. Unlike counsel's extensive communication with Bond, in **Hopfer**, counsel informed Hopfer that he found the petition to be meritless, but specifically noted that his decision was based upon his investigation "at this point," indicating that further review was forthcoming. **Hopfer**, 965 A.2d at 276-75. Counsel then told Hopfer that he was going to order the relevant transcripts and investigate the claims further. Without any further communication, counsel proceeded to file a **Turner/Finley** letter, in which counsel asserted that Hopfer's claims lacked merit, even though the letter was filed before counsel had even ordered the transcripts that were necessary to evaluate the claims. **Id.** at 275. Finally, we noted that Hopfer did not have a chance to respond to counsel's letter because the PCRA court granted counsel's motion to withdraw as counsel and dismissed the PCRA petition without a hearing and

- 10 -

without notice immediately upon receiving counsel's letter and motion. Unlike in *Bond*, we held that Hopfer was deprived of the opportunity to respond to both counsel's actions and the PCRA court's intent to dismiss the petition. We held that "service of any notice of dismissal, whether in the form of a Rule 907 notice by the court or a *Turner/Finley* no-merit letter, must occur at least twenty days prior to an official dismissal order." *Id.*

The instant matter falls within the dictates of *Bond* and the final holding of *Hopfer*. Here, like in *Bond*, Scott's counsel filed a no-merit letter. Also as in *Bond*, there is no question that Scott received the letter because the certified record contains two letters written by Scott, one sent to the clerk of courts and one to the PCRA court, in which Scott acknowledges that he had received counsel's filings. Scott was fully apprised of the reasons why counsel believed his claims to be meritless. He also clearly understood that he could proceed *pro se*, a fact that he admits in both of his aforementioned letters. We do not condone the PCRA court's dismissal of Scott's petition without full compliance with Rule 907. Nonetheless, the court dismissed the petition outside of the twenty-day deadline set forth in *Hopfer*'s specific holding. In *Bond*, we assigned significant evidence to the fact that Bond had ample opportunity to respond to counsel's application to withdraw as counsel and no-merit letter, but elected not to. Here, Scott had the same opportunity, and he took advantage of that opportunity by sending a letter to the PCRA court raising

issues ranging from PCRA counsel's purported conflict of interest to claims of ineffective assistance of counsel.

In sum, although **Bond** has been distinguished at times, it remains valid precedent that we are bound to apply. The instant case is more analogous to **Bond** than it is to **Feighery** or **Hopfer**. Thus, although Rule 907 notice is mandatory, the circumstances of this case do not warrant an automatic reversal. To the contrary, per **Bond** and **Hopfer**'s explicit holding, Scott is not entitled to any form of relief.

As a final matter, we must address Scott's applications regarding the federal indictment of Norman Howard, a police officer that was involved in Scott's apprehension in this case. Scott seeks a stay of the instant proceedings and a remand to the PCRA court for an evidentiary hearing to address the impact of Howard's arrest upon Scott's convictions. According to Scott, Howard was indicted for falsifying police reports, omitting evidence, and other related charges. Scott also asserts that the Fayette County District Attorney has terminated the prosecution in two other cases due to Howard's involvement in those cases, and his subsequent indictment.

We deny Scott's applications without prejudice to raise his claims related to Howard in a second PCRA petition. In **Commonwealth v. Lark**, 746 A.2d 585, 588 (Pa. 2000), the Pennsylvania Supreme Court held as follows:

> We now hold that when an appellant's PCRA appeal is pending before a court, a subsequent PCRA petition cannot be filed until the resolution of review of the pending PCRA petition by the

highest state court in which review is sought, or upon the expiration of the time for seeking such review. If the subsequent petition is not filed within one year of the date when the judgment became final, then the petitioner must plead and prove that one of the three exceptions to the time bar under 42 Pa.C.S. § 9545(b)(1) applies. The subsequent petition must also be filed within sixty days of the date of the order which finally resolves the previous PCRA petition, because this is the first "date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

*Id.* In other words, there is no need for us to halt these proceedings and to remand the case for further action. Scott is not without options, which, in such a circumstance, might compel us to review Scott's applications more closely. Rather, Scott may raise any claims related to Howard in a second PCRA petition.

That petition undoubtedly will be filed outside of the PCRA's one-year time limit. However, pursuant to *Lark*, the sixty-day time limit to file a claim based upon newly-discovered facts under the PCRA does not commence until we finalize this PCRA appeal. *Id.* (holding that Lark's second or subsequent PCRA was timely because it was filed within sixty days of the Court's resolution of his first PCRA petition, not within sixty days of when he learned of the information.). So long as Scott files a second PCRA petition within sixty days of the date of this decision, per *Lark*, he can pursue relief from the PCRA court in the first instance, which is the more prudent and judicially economical course of action. Consequently, we deny Scott's applications without prejudice to pursue relief in the first instance with the PCRA court.

- 13 -

Order affirmed.  Motions denied.

Judge Shogan joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  10/23/2015